David A. BANTA et al., Appellants,

v.

CHAMBERS-LIBERTY COUNTIES NAVIGATION DISTRICT, Appellee.

No. 7063.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Rehearing Denied Sept. 25, 1969.

C. A. Miles, Jr., Liberty, for appellants.

Daniel & Morrison, Liberty, for appellee.

STEPHENSON, Justice.

This is a condemnation suit brought by plaintiff, Chambers-Liberty Counties Navigation District, against the landowners as defendants, under Article 8263h, Vernon's Ann.Civ.St. Trial was by jury, and judgment was rendered that defendants recover $1,908.73 for the value of the surface of the 7.6345 acre tract taken, and no damages for the remaining severed mineral estate. The parties will be referred to here as they were in the trial court.

Section 34 of Article 8263h, V.A.C.S., provides that "no right of way can be condemned through any part of an incorporated city or town without the consent of the lawful authorities of such city or town." Over defendants' objections, a resolution adopted by the City of Liberty was admitted in evidence. The jury found that the land condemned in this suit lay within the boundaries of the land described in the City's resolution. Defendants have several points of error, all complaining of the action of the trial court in admitting such resolution in evidence because it was not shown the description of the land contained in the resolution included all of the land condemned in this suit. It is admitted by all parties that the land involved in this suit is located within the City Limits of Liberty.

◼ We do not find it necessary to pass upon the question as to whether there was evidence to support the finding by the jury that the land described in the resolution included the land condemned in this suit. We have concluded this matter is not one of legal concern to these defendants. The purpose of this part of Section 34 of Article 8263h, V.A.C.S., is for the benefit of the municipality. It is clearly understandable that a city must be protected so there would be no conflict in the use to which land in a city could be put, as between a navigation district and a city. We do not think it was the intention of the legislature to make this consent by the city a condition precedent which could be raised and relied upon by a landowner. See Crary v. Port Arthur Channel and Dock Co., 92 Tex. 275, 47 S.W. 967 (1898). These points of error are overruled.

◼ It is next contended by defendants that it was an abuse of discretion and error on the part of the trial court to permit the Navigation District to file its Second Amended Original Petition as a trial amendment. In its First Amended Original Petition, the description of the land taken contained the following:

"ALSO SAVE AND EXCEPT, and reserved unto Defendants, their heirs, successors and assigns, all right, title and interest in and to all of the oil, gas, and other minerals, subject to the above mentioned existing leases, in and under and that may be produced from said land, together with the right of ingress and egress in, over and upon said land for the purpose of or incidental to the exploration, development, production, and transportation thereof; provided that as to any future mineral leases or operations by Defendants, their heirs, successors, lessees, or assigns, (after termination of existing mineral leases), all above ground installations, drill sites, well-heads, tanks and other stationary equipment shall be restricted to two acres in the form of a square in the northeast corner of the tract hereinabove described."

The defendants offered evidence during the course of the trial to show, as damages, the additional expense of directional drilling. It was after this evidence was heard that the Navigation District was

permitted, over defendants' objections, to file its Second Amended Original Petition, and eliminate the two-acre restriction. Defendants argue that this was not a concession or reduction in demand in order to mitigate damages, but resulted in an additional burden on defendants' remaining mineral estate.

We think the law in this state is now clear that a condemning authority may amend its petition during the course of a trial for the purpose of taking less land, or a lesser estate in the land taken, when it can be done without injury to the landowner. Texas Power & Light Co. v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958); State v. Nelson, 160 Tex. 515, 334 S.W.2d 788 (1960).

It would appear at first consideration, that the Navigation District was increasing its demands, but this mineral exception must be considered in the light of the purposes for which the surface is being taken in order to make the real determination. Both petitions set forth the purposes of the taking as follows:

" * * * for the purposes of developing and improving the adjacent navigable waters of the Trinity River, spoil disposal areas, the establishment and development of a port, docks, warehouse, railroad extensions, and other purposes incident to or necessary for the development of industries on said lands, as authorized by Article 8263h and other laws of the State of Texas relating to Navigation Districts."

Under both of these petitions, the Navigation District could use all or any part of the 7.6345 acre tract (including the two acres) for any of the specified uses. However, in the First Amended Original Petition, defendants and their lessees were restricted to any future operations to the two-acre tract, and this restriction upon defendants was removed by the Second Amended Original Petition. We have concluded that the two-acre restriction did not limit the right of the Navigation District to the use of the surface. The Navigation District did not increase its demands in the Second Amended Original Petition. This point of error is overruled.

Defendants have points of error that the jury finding that the mineral interests would not be damaged by the taking of the surface had no support in the evidence, and that such finding was contrary to the great weight and preponderance of the evidence. In passing upon the no-evidence point, we consider only the evidence favorable to the jury finding, and in passing upon the other point we consider the entire record.

Tom Poynor qualified as an expert witness as a Consulting Petroleum Engineer. He testified to the following: This land is located in a proven or semi-proven area, and that these minerals have a cash market value. In his opinion, the fair cash value of these minerals was between twenty and thirty thousand dollars. That if the surface was covered with structures so that a rig could not get on the lease, such minerals would have no value. That there would be between ten and fifteen thousand dollars in additional cost to dig a directional well, which would affect the value of the minerals.

There was testimony by a witness to the effect that the straightening of a bend in the Trinity River together with certain other improvements would stop or curtail erosion. Another witness testified that the building up of the elevation, smoothing the surface and constructing levees would make it easier to get a rig on the property.

The mineral estate of these defendants under the surface taken has been damaged. Nichols on Eminent Domain, 3rd Ed., Vol. 2, page 407 defines "taking" as:

"The modern and prevailing view is that any substantial interference with private property which destroys or lessens its value, or by which the owner's right to

its use or enjoyment is in any substantial degree abridged or destroyed, is, in fact and in law, a 'taking' in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remains undisturbed."

The defendants must get all of their damages in the one action. City of LaGrange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243 (1943); Willcockson v. Colorado River Municipal Water District, 436 S.W.2d 203 (Austin Civ.App., 1968, error ref., n. r. e.). They cannot wait to see what is done in the future and then file a separate action for the damages that may have then occurred. It is the purposes for which the surface is taken rather than the use to which it may be put later that determine the amount of damages these landowners may recover.

From all of the evidence, we find the jury's answer of no damage to the minerals is clearly wrong and manifestly unjust. Defendants' point of error that their finding is contrary to the great weight and preponderance of the evidence is sustained.

Reversed and remanded.